UNITED STATES of America,
Plaintiff–Appellee,

v.

Ulysses Sympson REED, Jr.,
Defendant–Appellant.

No. 90–7374.

United States Court of Appeals,
Eleventh Circuit.

Aug. 1, 1991.

Thomas H. Figures, Mobile, Ala., for defendant-appellant.

J.B. Sessions, III, U.S. Atty., Donna E. Barrow, Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

In this case, we decide whether an arbitration award adverse to a government employee asserting rights under a collective bargaining agreement renders later criminal punishment assessed against the same person for the same conduct violative of the Double Jeopardy Clause.

Defendant Ulysses S. Reed, a letter carrier for the U.S. Postal Service, appeals the denial of his motion to dismiss an indictment charging him with three counts of embezzling money he received while delivering C.O.D. parcels for the Postal Service. This same alleged conduct was the subject of an arbitration proceeding between defendant and the Postal Service. The arbi-

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

trator ordered that defendant be placed on a thirty-day "disciplinary suspension" as a result of the proceeding. Relying on the Supreme Court's opinion in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), defendant now argues that because this arbitration proceeding resulted in his suspension, imposition of the criminal punishment sought in the instant indictment would violate his right under the Double Jeopardy Clause against being subject to multiple punishments for the same conduct. We disagree and affirm the district court's denial of defendant's motion to dismiss the indictment counts.

## I.  BACKGROUND

Defendant was discharged from his duties as a letter carrier after the Postal Service accused him of misappropriating $364.58 from money he received from postal customers for C.O.D. parcels. Defendant filed a grievance challenging his termination. Pursuant to the National Association of Letter Carriers' labor agreement with the Postal Service, defendant initiated binding arbitration to resolve the dispute. The grievance was sustained in part and denied in part by the arbitrator, who concluded that although the physical evidence tended to show that defendant had failed to follow proper accounting procedures, the mens rea evidence on misappropriation and conversion was weak. The arbitrator ordered that defendant be reinstated without loss of seniority, but that he be placed on a thirty-day "disciplinary suspension."

■ Defendant was later charged by criminal indictment with three violations of 18 U.S.C. § 1711, which prohibits misappropriation of postal funds. Defendant moved to dismiss the indictment on the ground of double jeopardy. The government conceded that this criminal prosecution concerns the same conduct as the arbitration proceeding. The district court denied defendant's motion to dismiss the indictment, and defendant appealed.[1]

## II.  DISCUSSION

■ The Fifth Amendment's Double Jeopardy Clause[2] consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Defendant argues that the arbitrator's imposition of disciplinary suspension, followed by criminal punishment for the same conduct, violates the third of these protections.

Defendant relies heavily on the Supreme Court opinion in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in which the Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 448–49, 109 S.Ct. at 1902. In that case, the defendant had been convicted and punished for filing a number of false Medicare claims, totalling $585. Later, the government brought a civil action against the defendant under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3731, and sought $130,000 in damages under the fixed-penal-

---

1.  Our jurisdiction to hear interlocutory appeals from the denial of a defendant's motion to dismiss charges on the ground of double jeopardy was established in *Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977).

   Defendant also appeals the denial of his motion to dismiss the indictment on the ground that the indictment is the result of selective or vindictive prosecution. Because there has not yet been a final judgment in this case, we have no jurisdiction to hear this claim and therefore do not address it. *United States v. Rey*, 641 F.2d 222, 223–24 (5th Cir.1981). In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

2.  The Double Jeopardy Clause reads as follows:

   "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...."U.S. Const. Amend. V.

ty provision of that statute. The Court concluded that a $130,000 civil sanction qualified as "punishment" for double jeopardy purposes because of its lack of rational relation to the $16,000 expense it was estimated the government suffered from the false claims themselves and the investigation that followed.

■ In this case, defendant says that the "civil penalty" of disciplinary suspension imposed by the arbitrator bore no rational relation to the loss suffered by the government from defendant's conduct. As a result, defendant argues, the criminal indictment subjects him to a second "punishment" for the same conduct, in violation of the Double Jeopardy Clause.[3]

■ The district court rejected defendant's argument, concluding that the penalty imposed by arbitration did not amount to "punishment" for double jeopardy purposes because disciplinary suspension from employment was mild in comparison to the criminal penalty for defendant's conduct, which could include a fine equal to the amount embezzled and a prison sentence of as much as ten years. *See* 18 U.S.C. § 1711. At the outset we note that the district court misapplied the *Halper* test for ascertaining when a civil penalty is "punishment" for double jeopardy purposes.[4] Under *Halper*, "the double jeopardy claim hinges on whether the civil penalties (1) concerned the same conduct as the criminal proceedings and (2) rose to the level of criminal punishment because of the lack of rational relation to the Government's loss." *United States v. Mayers*, 897 F.2d 1126, 1127, *reh'g and reh'g en banc denied*, 907 F.2d 1145 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 178, 112 L.Ed.2d 182 (1990). The government has conceded that the instant indictment concerns the same conduct as the arbitra-

tion proceedings. But, the *Halper* analysis does not compare, as did the district court, the civil and criminal penalties to determine whether there is a significant disparity. Instead, *Halper* requires a comparison between the civil penalty and the government's loss resulting from defendant's conduct.

We think, however, that the *Halper* test simply does not apply to the facts of this case. In *Halper* the Supreme Court announced "a rule for that rare case, ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. In this case, the "civil penalty" was not awarded pursuant to a statutory fixed-penalty provision, but as a result of a binding arbitration proceeding conducted pursuant to a collective bargaining agreement. On this ground alone, we think *Halper* is distinguishable. *See id.* at 449–51, 109 S.Ct. at 1902–03 (stressing limited holding); *id.* at 452–53, 109 S.Ct. at 1904 (Kennedy, J., concurring) (same); *cf. United States v. Pani*, 717 F.Supp. 1013, 1019 (S.D.N.Y.1989) (stressing limited holding of *Halper* and distinguishing on grounds that defendant charged with only three counts of violating FCA could not be "prolific but small gauge offender").

At the same time, we find *Halper* helpful in framing our analysis. The *Halper* Court noted that "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901. If the civil sanction "cannot fairly be said solely to serve a remedial purpose, but rather can be ex-

---

**3.** We note that, under binding precedent, the sequential order of the "civil" and "criminal" proceedings is irrelevant to our analysis. "Although in this case the civil penalty preceded, rather than followed the criminal indictment, the *Halper* principle that civil penalties can sometimes constitute criminal punishment for double jeopardy purposes would seem to apply whether the civil penalties come before or after the criminal indictment." *United States v. May-*

*ers*, 897 F.2d 1126, 1127, *reh'g and reh'g en banc denied*, 907 F.2d 1145 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 178, 112 L.Ed.2d 182 (1990).

**4.** We review *de novo* the district court's double jeopardy ruling. *United States v. Benefield*, 874 F.2d 1503, 1505 (11th Cir.1989).

**578**

plained only as also serving either retributive or deterrent purposes," then the sanction constitutes punishment and implicates the Double Jeopardy Clause. *Id.* at 448, 109 S.Ct. at 1902. Where the civil sanction at issue is money damages imposed pursuant to a statutory provision, we are to look to the size of the award to determine whether it is rationally related to the remedial goal of compensating the government for its loss.

Because no damage award has been imposed on defendant, the *Halper* test comparing money damages with the government's loss is inapposite to the facts of this case. Instead, we must look more broadly at "the penalty imposed and the purposes that the penalty may fairly be said to serve." *Id.* at 448, 109 S.Ct. at 1901. In this case, we think the sanction of suspension from employment for defendant's on-the-job conduct is best characterized as an attempt by the arbitrator to vindicate the contract rights of the government—and of defendant—under the collective bargaining agreement between them. Whatever sanction the arbitrator might have imposed, as long as it was within the framework provided by an employment contract, serves "legitimate nonpunitive governmental objectives" and is by its nature remedial. *Id.* at 448, 109 S.Ct. at 1902. Where an individual and the government enter into an employment relationship governed by a collective bargaining agreement, arbitration awards against the employee made pursuant to that agreement can only serve as remedies for breach of the contract, and necessarily "do no more than make the Government whole." *Id.*

Though the imposition of a thirty-day disciplinary suspension may have "carr[ied] the sting of punishment" for defendant, the *Halper* Court made clear that the determination whether a particular civil sanction amounts to punishment for double jeopardy purposes is not carried out from the defendant's perspective. *Id.* at 447 n. 7, 109 S.Ct. at 1901 n. 7. We look instead to the purposes advanced by the arbitrator's award and conclude that the employment suspension served to vindicate the government's rights under the contract and

"constitutes the 'rough remedial justice' permissible as a prophylactic governmental action." *United States v. Bizzell,* 921 F.2d 263, 267 (10th Cir.1990) (quoting *Halper,* 490 U.S. at 446, 109 S.Ct. at 1900) (debarment from participation in federal housing program did not implicate Double Jeopardy Clause); *see also Greene v. Sullivan,* 731 F.Supp. 838, 840 (E.D.Tenn.1990) (excluding individual from participation in Medicare and Medicaid programs served remedial goals and did not implicate Double Jeopardy Clause).

We note finally that application of the *Halper* test to this kind of sanction would work an absurd result. If such was the law, then a government employee targeted by a criminal prosecution for actions taken within the scope of his employment could pursue arbitration, where that was an option, and thereby possibly avoid criminal sanctions greater in severity than any arbitrator's decision. We will not offer up the Double Jeopardy Clause as a forum-shopping tool for government employees who have violated the law. *Cf. Halper,* 490 U.S. at 450, 109 S.Ct. at 1903 (stressing that its double jeopardy analysis was carefully constructed to avoid "disrupt[ing] the Government's need to combat fraud").

Because we conclude that the arbitration award imposed against defendant implicates no double jeopardy concerns, defendant's motion to dismiss the instant criminal indictment was properly denied. We AFFIRM.