UNITED STATES of America, Appellant,

v.

James W. McALLISTER,
Defendant–Appellee.

No. 1235, Docket 96–1591.

United States Court of Appeals,
Second Circuit.

Argued April 11, 1997.

Decided July 17, 1997.

Andrew R. Kinnie, Watertown, NY (Kinnie Law Firm, Watertown, NY), for Defendant–Appellee.

Michael C. Olmsted, Assistant United States Attorney, Syracuse, NY (Thomas J. Maroney, United States Attorney, Northern District of New York), for Appellant.

Before: VAN GRAAFEILAND, WALKER, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

The United States (the "government") appeals from a final judgment of the United States District Court for the Northern District of New York. Magistrate Judge Daniel Scanlon, Jr. dismissed a criminal information charging defendant James McAllister with the misdemeanor of driving while intoxicated on a United States military installation, in violation of 18 U.S.C. § 13. The district court, Thomas J. McAvoy, C.J., affirmed. The court found that McAllister had received prior "punishment" when his commanding officer issued a letter of reprimand, reduced his rank, suspended his on-base driving privileges for one year, and barred his re-enlistment, making any additional punishment un-

constitutional under the Double Jeopardy Clause.

We reverse the judgment and remand for further proceedings.

### Background

At the time in question McAllister was a uniformed soldier in the United States Army stationed at Fort Drum, New York. At 2:20 a.m. on June 4, 1995, military police officers on the Fort Drum base stopped his vehicle because they observed erratic driving. McAllister, exuding a strong odor of alcohol, failed a field sobriety test and was arrested. At the military police station, McAllister took a "breathalyzer" test and registered a blood alcohol content of .21%, significantly exceeding the legal limit of .1%.

McAllister's case was referred to the United States Attorney for prosecution. A criminal information filed on June 12, 1995, in the United States District Court for the Northern District of New York, charged McAllister with operating a motor vehicle while intoxicated, in violation of 18 U.S.C. § 13, incorporating New York Vehicle Traffic Law §§ 1192(2) and (3).

While these charges were pending, McAllister's military command imposed a series of administrative sanctions. By memorandum dated June 4, 1995, Captain Clayton H. Holt, McAllister's commanding officer, suspended McAllister's on-base driving privileges pending adjudication of the criminal charge. Captain Holt's memorandum went on to state: "If you are found guilty of an intoxicated driving charge, your installation POV driving privileges are automatically revoked for a period of one year from the date of this letter." On July 16, 1995, McAllister received a general letter of reprimand, and an administrative reduction in rank from corporal to specialist. This demotion affected his duties and status, but did not reduce his salary. McAllister also received a "Bar to Re-enlistment Certificate," dated July 26, 1995, indicating that the Army would not allow him to re-enlist at the end of his tour of duty.[1] No court martial was convened with

respect to McAllister's offense. *See* 10 U.S.C. § 816.

McAllister was arraigned in the district court on the criminal charge on August 16, 1995. He pleaded not guilty and moved to dismiss the information on the ground that the sanctions already imposed on him constituted punishment under the Double Jeopardy Clause and therefore barred further proceedings against him. In March 1996, Magistrate Judge Scanlon granted McAllister's motion to dismiss, ruling that the administrative actions taken against McAllister "were sufficiently grave and onerous to constitute a *punishment* barring further punishment for the same offense." (emphasis on original).

On appeal, the district court affirmed, holding that the suspension of driving privileges was "dispositively punitive." Although the court suggested that the reduction in rank and bar to re-enlistment were probably also punitive, it declined to rule on these issues in light of its conclusion that suspension of driving privileges was punishment.

This appeal followed.

### Discussion

■ The double jeopardy clause prohibits a second prosecution for the same offense after an acquittal or a conviction, and also prohibits multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The district court found that McAllister's earlier administrative punishment precludes additional punishment and therefore bars a trial. On appeal, the government argues that (1) the discipline imposed by the Army on McAllister was remedial rather than punitive and (2) employer sanctions of the type imposed on McAllister are not "punishment" within the double jeopardy clause.

In holding that sanctions imposed by the military on McAllister constituted prior punishment, the district court relied on language in *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989), where the Supreme Court stated that

---

1. The certificate listed the other disciplinary measures imposed under the heading "Non–Judi-

cial Punishment (Article 15)." The government contends this notation was mistaken.

a civil penalty may constitute punishment for double jeopardy purposes if it is intended to achieve "punitive" goals such as retribution or deterrence. The Supreme Court explained that if a "civil sanction . . . cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes," it "is punishment, as we have come to understand the term." *Id.* at 448, 109 S.Ct. at 1902. Following this explanation, the district court found that the suspension of McAllister's driving privileges was intended "not solely for remedial purposes, but to serve the goals of punishment, retribution and deterrence," and therefore concluded was punishment.

In light of the Supreme Court's recent discussion of the Double Jeopardy Clause in *United States v. Ursery,* — U.S. —, — – —, 116 S.Ct. 2135, 2144–47, 135 L.Ed.2d 549 (1996), we question whether the district court properly applied *Halper.* In *Ursery,* the Court described the language in *Halper* on which the district court relied as "dictum." — U.S. at — n. 2, 116 S.Ct. at 2145 n. 2. It also made clear that sanctions having punitive and deterrent elements are not necessarily punishment within the meaning of the Double Jeopardy Clause. *Id.* at — – —, 116 S.Ct. at 2148–9. The district court, in its literal application of the dictum in *Halper,* assumed that a sanction having *any* punitive or deterrent element necessarily amounts to "punishment" under the Double Jeopardy Clause. The reasoning of *Ursery* appears to contradict this assumption.

Furthermore, the language in *Halper* upon which the district court relied appears to be contradicted by the sentence immediately following it. The sentence cited by the district court can be read to suggest that a civil sanction shall be deemed a criminal punishment for double jeopardy purposes if it "can-

not fairly be said *solely* to serve a remedial purpose"—i.e., if it has some retributive or deterrent purpose in addition to its remedial goal. The next sentence, however, says that a civil sanction shall be regarded as a criminal punishment "to the extent that" it "may not be characterized as remedial, but *only* as a deterrent or retribution." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902 (emphasis added). *Halper* never resolved the general conflict,[2] but was decided on a different theory.

■ But this appeal does not require us either to reconcile apparently conflicting dicta in *Halper* or to reconcile *Halper* with *Ursery.* In disciplining McAllister after his arrest, the government acted not in its capacity as sovereign, but rather as an employer. The measures imposed by the commanding officer, including suspension of driving privileges on the employer's property, reduction of authority, and foreclosure of re-employment at the end of McAllister's existing contract of employment, regardless whether they had any punitive intention, were sanctions that a private employer could impose on an employee who has endangered safety by drunken driving on the employer's premises. Such sanctions do not require use of sovereign power or invoke the power of the state to punish in the manner of a sentence of imprisonment. We conclude that these sanctions were not the type of "punishment" that triggers the protection of the Double Jeopardy Clause and bars further punishment.

The Court of Appeals for the Fifth Circuit recently applied similar reasoning in upholding the prosecution for drunken driving of a civilian Air Force employee after he had been suspended from his job for three days as a result of the same conduct. *See United States v. Reyes,* 87 F.3d 676, 680–81 (5th Cir.1996); *see also United States v. Imngren,* 98 F.3d 811, 815–16 (4th Cir.1996) (one-year suspension of on-base driving privileges of

---

**2.** In *United States v. Hernandez–Fundora,* 58 F.3d 802, 806 (2d Cir.1995), we relied on the second sentence in *Halper* to hold that "the mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes 'punishment' for double jeopardy purposes." *See also Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 792, 114

S.Ct. 1937, 1953, 128 L.Ed.2d 767 (1994) (O'Connor, J., dissenting) (citing *Halper* for the proposition that "a civil sanction will be considered punishment to the extent that it serves *only* the purposes of retribution and deterrence, as opposed to furthering *any* nonpunitive objective") (emphasis added).

civilian army employee was "remedial" and therefore was not "punishment" barring subsequent prosecution for driving while intoxicated); *United States v. Payne,* 2 F.3d 706, 710–711 (6th Cir.1993) (discharge of postal worker for "obstruction and desertion of mail" did not bar subsequent prosecution for the same incidents); *United States v. Reed,* 937 F.2d 575, 577–78 (11th Cir.1991) (disciplinary suspension of postal employee for embezzlement was not punishment barring subsequent prosecution for same acts).

■ We hold that, where the government, acting as employer of members of the armed forces, disciplines a member by using measures that are available to private employers, and are not uniquely within government's power to punish for criminal wrongdoing, such discipline ordinarily will not constitute "punishment" within the meaning of the Double Jeopardy Clause. As the Fifth Circuit noted in *Reyes,* there is "ample support" in Supreme Court procedents for an approach that distinguishes between the government acting as sovereign and the government acting as an employer. 87 F.3d at 680. This distinction avoids the patently "absurd result[s]," *Reed,* 937 F.2d at 578, that would arise if government employees accused of serious misconduct could escape trial and punishment because they had been suspended or relieved of responsibilities or privileges pending adjudication of their guilt, or if the government declined to sanction an employee whose conduct was serious enough to warrant prosecution for fear of jeopardizing the prosecution.

McAllister argues that *Reyes* and *Imngren* are distinguishable because those cases involved *civilian* military employees who were not subject to punishment under the Uniform Code of Military Justice ("UCMJ"). 10 U.S.C. § 801 *et seq.* He contends that his situation differs from those of civilian employees because he was subject to court martial, as well as summary punishment, under Articles 15 and 16 of the UCMJ. 10 U.S.C. §§ 815, 816. We are not concerned with what the Army might have done, but rather with what it did do. While the Army might have brought criminal proceedings against McAllister and punished him under the

UCMJ, it did not do so. When the criminal information was lodged against him in the district court, the Army had not previously punished McAllister in the sense intended by the Double Jeopardy Clause. We therefore conclude that McAllister's prosecution in the district court will not offend the Double Jeopardy Clause.

### Conclusion

The judgment of the district court dismissing the charges against McAllister is reversed, and the case is remanded for further proceedings.