Robert Thomas GARNER, III, Plaintiff

v.

**U.S. DEPARTMENT OF LABOR, Defendant.**

No. 5:98CV84BrS.

United States District Court,
S.D. Mississippi,
Western Division.

March 29, 1999.

Frank J. Campbell, Teller, Martin, Chaney & Hassell, Vicksburg, MS, for plaintiffs.

Mitzi Dease Paige, U.S. Attorney's Office, Jackson, MS, for defendants.

### MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This matter is before the Court on the plaintiff's Petition of Mandamus and Petition to Declare Certain Applications of Law Unconstitutional [docket no. 1–1] and on Motion of the defendant to Dismiss [docket no. 2–1] pursuant to Fed. R. Civ. Proc. 12(b)(1). Having carefully considered the motions, briefs, applicable statutory and case law, and being otherwise

duly advised in the premises, the Court finds as follows:

## I. FACTUAL SUMMARY

On May 19, 1998, the plaintiff filed the present action urging the Court to declare the application of 5 U.S.C. § 8148(a) unconstitutional and to compel payment of all benefits improperly withheld and future benefits under the Federal Employees' Compensation Act ("FECA").

Following a job-related injury while employed by the federal government, Robert Garner began receiving monthly disability benefits pursuant to FECA, 5 U.S.C. § 8101, *et seq.* On November 20, 1997, Garner pleaded guilty to one count of making false statements to obtain federal employee disability compensation benefits, 18 U.S.C. § 1920. The charge was predicated upon Garner's failure to report $854.52 in an application for disability benefits.

In a letter dated February 13, 1998, the Office of Worker's Compensation Programs ("OWCP"), an agency under the Department of Labor, informed Garner that, pursuant to 5 U.S.C. § 8148(a), he was no longer entitled to receive FECA benefits. Termination of the benefits became effective November 20, 1997, the date on which Garner entered his guilty plea. He timely exercised his right to appeal by requesting reconsideration of the decision. Garner argued, as he does in the present action, that forfeiture of the benefits violates the Ex Post Facto Clause and the Eighth Amendment's proscription against cruel and unusual punishment. The OWCP affirmed its earlier decision and Garner appealed to the Employees' Compensation Appeals Board ("ECAB") on May 11, 1998. After learning that the appeal process may last twenty to twenty-four months, Garner filed the present action asserting constitutional violations.

## II. DISCUSSION

The standard governing a motion to dismiss under Rule 12(b)(1) is well established. The court must take the allegations in the complaint to be true unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir. 1994); *Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir.1992). Subject matter jurisdiction is determined at the time the complaint is filed. *Carney,* 19 F.3d at 954.

■ This Court is void of jurisdiction to review the decision of the Secretary of Labor to award or deny benefits under FECA.

> (a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application. The Secretary, in accordance with the facts found on review, may—
>
> > (1) end, decrease, or increase the compensation previously awarded; or
> >
> > (2) award compensation previously refused or discontinued.
>
> (b) The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
>
> > (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
> >
> > (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.
>
> Credit shall be allowed in the accounts of a certifying or disbursing official for payments in accordance with that action.

5 U.S.C. § 8128. In *Woodruff v. U.S. Dept. of Labor,* the Eleventh Circuit Court of Appeals described § 8128 as a "door-closing provision," because "[t]he Secretary's decision to award or deny compensation to a particular claimant is not subject to judicial review." 954 F.2d 634, 636–37 (11th Cir.1992); *see also White v. United States,* 143 F.3d 232, 237 (5th Cir.1998). The United States Supreme Court has also commented that Congress uses such "unambiguous and comprehensive language" as found in § 8128(b) "when [it] intends to bar judicial review altogether." *Lindahl*

*v. Office of Personnel Management,* 470 U.S. 768, 780 n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985).

The only exception to the "door-closing provision" arises when a FECA plaintiff raises constitutional questions which are unsuitable for determination in an administrative hearing. *Woodruff,* 954 F.2d at 639; *Rodrigues v. Donovan,* 769 F.2d 1344, 1347 (9th Cir.1985). However, "simply alleging a constitutional claim is not adequate to overcome a door-closing statute." *Reid v. Engen,* 765 F.2d 1457, 1461 (9th Cir.1985).

The current question before the Court involves the application of 5 U.S.C. § 8148(a):

> Any individual convicted of a violation of section 1920 of title 18, or any other Federal or State criminal statute relating to fraud in the application for a receipt of any benefit under this subchapter or subchapter III of this chapter, shall forfeit (as of the date of such conviction) any entitlement to any benefit such individual would otherwise be entitled to under this subchapter or subchapter III for any injury occurring on or before the date of such conviction. Such forfeiture shall be in addition to any action the Secretary may take under section 8106 or 8129.

### A. Ex Post Facto Claim

■ The ex post facto prohibition found in the United States Constitution, forbids any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (citing *Cummings v. Missouri,* 4 Wall. 277, 325–326, 18 L.Ed. 356 (1866)). The Fifth Circuit explained that

> a statute violates the Ex Post Facto Clause if (1) it criminalizes conduct that was legal when done; (2) inflicts greater punishment for an offense than was inflicted by the law in existence at the time the offense was committed; or (3)

eliminates a defense that was available under the law at the time the offense was committed.

*United States v. Rose,* 153 F.3d 208, 210 (5th Cir.1998) (citing *Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990)). However, the Ex Post Facto Clause only applies to laws which may be characterized as "punishment." *Flemming v. Nestor,* 363 U.S. 603, 613, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Manocchio v. Kusserow,* 961 F.2d 1539, 1541 (11th Cir.1992). Therefore, the Court may not consider the ex post facto nature of 5 U.S.C. § 8148(a) unless it first determines that Congress intended the statute to be "punitive" at the time of passage. *Manocchio,* 961 F.2d at 1541.

The plaintiff argues that the fraudulent conduct upon which he pleaded guilty occurred before the amendments to 5 U.S.C. § 8148(a) became effective on September 14, 1994, and that he should only be subject to a fifteen month forfeiture as provided in the pre-amendment statute. Although it is does not control this Court's determination of the present matter, the District Court in *Slugocki v. United States,* 988 F.Supp. 1443 (S.D.Fla.1997), considered whether 5 U.S.C. § 8148(a) violated the Constitution's Ex Post Facto Clause under circumstances nearly identical to those present. In *Slugocki,* a federal employee filed suit challenging the termination of his FECA benefits after he was convicted of felony fraud in connection with the receipt of FECA benefits. *Inter alia,* the plaintiff argued that application of § 8148(a) was punitive in nature and contravened the prohibition against ex post facto laws. The District Court rejected Slugocki's claim and found that "the primary goal of this section is to deny benefits to those who attempt to defraud the OWCP and that the punitive sting is a secondary consequence of the forfeiture." *Id.* at 1448.

This Court agrees with the *Slugocki* court and finds that the reasoning employed and the case law cited therein are

highly instructive in resolving the present matter. First, Congressman Fawell illustrated the legislative intent of § 8148 stating:

This will provide the Department of Labor with the authority to eliminate benefits to individuals who have been convicted of defrauding the FECA Program and will save the Federal Government millions of dollars. FECA is a workers' compensation law applicable to more than 3 million civilian employees of the Federal Government. The program pays compensation directly to injured employees, provides for the payment of medical expenses, and pays benefits to dependents of covered workers in cases involving a workrelated death. In the past, the criminal and administrative sanctions applicable to persons committing fraud against the FECA Program were very limited. In some cases, the Department of Labor lacked the statutory authority to terminate benefits-even when an individual was convicted of defrauding the program. A temporary legislative fix in the fiscal year 1994 Labor–HHS–Education appropriations bill enabled the Department of Labor to pursue a number of cases involving fraudulent claims, which would have cost the taxpayers approximately $4 million over the lifetime of the claims. The language in H.R. 4606 will enhance the deterrent value of the Federal Employee's Compensation Act, enable the Government to punish those who defraud the program, the most important, save the taxpayers the cost of supporting those who defraud the program.

Cong. Rec. H. 9454, Sept. 22, 1994. Congress unambiguously intended the bill to prevent the loss of millions of federal dollars from FECA fraud and recognized its punitive effects as incidental to the remedial goals. Where "the legislative history, taken as a whole, demonstrates that the primary goal of the legislation is to protect present and future ... beneficiaries [of government aid programs] from the abusers of these programs, ... the legislative intent ... is to protect the public" and the

sanction is remedial, not punitive. *Manocchio,* 961 F.2d at 1542. Furthermore, "[w]here the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected." *Flemming,* 363 U.S. at 614, 80 S.Ct. 1367; *see also, Peeler v. Heckler,* 781 F.2d 649, 651 (8th Cir.1986) (finding that "[i]f the law in question is focused on the past crime, then it is likely intended as punishment, while if the focus is upon the benefit from which the person is barred, it is not, even though the impact on the person may be harsh").

Other courts "have ruled in a variety of contexts that such enactments are constitutional." *Slugocki,* 988 F.Supp. at 1449. The District Court for the Southern District of Florida recently summarized the analogous case law:

[I]n *Jensen,* 766 F.2d at 386, the Eighth Circuit ruled that a 1980 amendment to the Social Security Act, which barred payment of social security disability benefits to persons in prison on a felony conviction, could constitutionally be applied to a person in prison based upon a 1977 conviction. *See also Wiley v. Bowen,* 824 F.2d 1120 (D.C.Cir.1987). Importantly the Courts in Jensen and Wiley based their decisions on the fact that social security benefits, including the disability benefits at issue in Jensen, were "noncontractual benefits" and, as such, the statute was deemed "neither an ex post facto law nor a bill of attainder because the suspension of a noncontractual benefit cannot be considered a punishment." *Jensen,* 766 F.2d at 386. (Citing *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). *See also Bae v. Shalala,* 44 F.3d 489, 492 (7th Cir.1995); *Zipkin v. Heckler,* 790 F.2d 16 (2d Cir.1986).

Similarly, in *Manocchio v. Kusserow,* 961 F.2d 1539 (11th Cir.1992), the Eleventh Circuit ruled that a mandatory five-year exclusion from participation in

Medicare programs based upon a conviction for a Medicare fraud, which exclusion went into effect in 1987, could be applied to a 1984 incident. In so ruling the Court noted,

> While the desire to provide a deterrent is a punitive goal, we find that the legislative history, taken as a whole, demonstrates that the primary goal of the legislation is to protect present and future Medicare beneficiaries from the abusers of these programs. Therefore, since the legislative intent of the exclusionary period is to protect the public, the sanction is remedial, not punitive.

*Id.* at 1542.

*Slugocki*, 988 F.Supp. at 1449.

■ Section 8148(a) addresses the disability benefits conferred under FECA and provides for their discontinuance when the beneficiary is convicted for making fraudulent FECA applications. It does not exact an arbitrary or capricious fine which only serves the goals of deterrence and retribution. Instead, it provides the practical and equitable conclusion that a person may not benefit from a program upon which he commits fraud. The Court finds that § 8148(a) is not punitive and, therefore, is not subject to scrutiny under the Ex Post Facto Clause.

### B. Cruel and Unusual Punishment/Excessive Fine Claims

■ The plaintiff has wholly failed to show that application of § 8148(a) constitutes cruel and unusual punishment. As discussed above, the forfeiture of future disability benefits under FECA is not primarily punitive in nature. Moreover, any punitive effects are merely incidental and clearly not "so greatly disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice." *United States v. Vice*, 562 F.2d 1004, 1005 (5th Cir.1977).

However, "[t]he Eighth Amendment [also] protects against excessive fines, including forfeitures." *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 495, 139 L.Ed.2d 450 (1997). In *United States v. Bajakajian*, the United States Supreme Court first stuck down a fine as "excessive" under the Eighth Amendment. 524 U.S. 321, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314 (1998). There, the defendant was charged with attempting to leave the United States with $357,144, which he had failed to report as required by 31 U.S.C. § 5316(a)(1)(A). After Bajakajian pleaded guilty to the charges, the government sought forfeiture of the entire amount under 18 U.S.C. § 982(a)(1), which provides that a person convicted of willfully violating § 5316 shall forfeit "any property ... involved in such an offense." Upon granting the defendant's writ of certiorari, the United States Supreme Court considered whether the forfeiture violated the Eighth Amendments' prohibition against excessive fines.

The Court first noted that the sanction imposed by § 982 constitutes a punishment and rejected the government's arguments that the statute was remedial as it compensated the government for the loss of information. *Id.* at 2034. Next, the Court directed its inquiry to whether the "punitive forfeiture [was] grossly disproportional to the gravity of a defendant's offense." *Id.* at 2036. In reaching its conclusion that the punishment was "grossly disproportional" to the offense, the Court made several observations: (1) the respondent's violation was unrelated to any other illegal activities; (2) the harm caused by the respondent (loss of information) only affected one party, the government; and (3) the respondent committed no fraud and caused "no loss to the public fisc." *Id.* at 2038–39.

The case *sub judice* is readily distinguishable from *Bajakajian*. First, the primary purpose of § 8148(a) is not to punish but to limit the future payment of federal funds to persons guilty of receiving them under false, fraudulent FECA applications. Furthermore, a plaintiff subject to forfeiture under § 8148(a) does not simply con-

tribute to the loss of information collected by the government. He causes loss to the public fisc by fraudulently applying for and receiving disability benefits which are derived from federal tax dollars.

The Court finds that § 8148(a) does not constitute an "excessive fine" as defined by Eighth Amendment jurisprudence. Without a sufficient showing that § 8148(a) violates a right secured under the United States Constitution, the plaintiff fails to overcome its "door closing provision." Therefore, this Court lacks subject matter jurisdiction over the plaintiff's remaining motion to enjoin the defendant from applying the forfeiture provision and to order that it compensate the plaintiff for past forfeitures. Accordingly,

IT IS THEREFORE ORDERED that the plaintiff's Petition of Mandamus and Petition to Declare Certain Applications of Law Unconstitutional [docket no. 1–1] are DENIED. FURTHERMORE, IT IS ORDERED that the defendant's Motion to Dismiss [docket no. 2–1] is GRANTED.

A separate judgment will be entered herein in accordance with this order as required by Rule 58 of the Federal Rules of Civil Procedure.